**In re CLASSIC PRINTERS, INC., Debtor.**

**FORD MOTOR CREDIT COMPANY, Plaintiff.**

v.

**CLASSIC PRINTERS, INC., Debtor-in-Possession, Defendant.**

Bankruptcy No. 82–00993–BKC–JAG.
Adv. No. 82–0502–BKC–JAG–A.

United States Bankruptcy Court, S.D. Florida.

July 1, 1982.

Richard W. Smith, c/o Johnson & Smith, Fort Lauderdale, Fla., for debtor-defendant.

Patrick S. Scott, c/o Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, Fla., for plaintiff.

### FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

This adversary proceeding was brought by Ford Motor Credit, a secured creditor of the debtor-in-possession for relief from stay and for reclamation of property, specifically, two printing presses.

Ford financed the purchase of the two presses by the debtor under an agreement entitled "lease" but which the plaintiff concedes gives it only a security interest in the presses. The debtor was in default under the agreement prior to a fire on its premises which damaged both machines. Both were moved to the premises of Apex Printers where one is in storage. The larger press was repaired by Apex at a cost of approximately $16,000 to $18,000 and is being used by it without the payment of any rental. In order to repossess its collateral, Ford obtained a writ of replevin in state court (Plaintiff's Exhibit No. 1). The sher-

iff executed by posting on the property on May 12, 1982, but did not physically remove the presses. (Plaintiff's Exhibit No. 1). The debtor then filed its chapter 11 petition in bankruptcy in May. The debtor is willing to deliver the smaller press to Ford, but opposes the lifting of the stay as to the larger press. An officer of Apex testified that it will now pay the debtor $1,500 per month rental for the press.

Ford asserts that the press never became property of the estate because of the replevin action. Alternatively, it asserts that the debtor's remaining rights did not include the right of possession and use of the press and argues that this defeats debtor's position that the press is necessary to a reorganization. Since the debtor concedes that it has no equity in the press, Ford says that the requirements of 11 U.S.C. § 362(d)(2) have been satisfied.

Ford cites the case of *Cross Electric Co. v. United States,* 664 F.2d 1218 (4th Cir.1981) in which the debtor sought a turnover of an account receivable which had been levied upon by I.R.S. prior to bankruptcy. The court there held that, under the Internal Revenue Code, the debtor's only rights were to redeem the property or to receive any surplus after sale, and that only these limited rights, not the property itself, became property of the estate.

A replevin action under Florida law is an entirely different proceeding from an I.R.S. levy. Upon the appropriate showing, a plaintiff may obtain a prejudgment writ of replevin. Although a plaintiff is then entitled to possession of the property, the defendant can post a bond either before or after execution by the sheriff and retain or regain possession. The right to possession is not conclusively determined until trial. (§ 78.01–78.21, Fla.Stats.).

A replevin action involves the right of *possession,* not necessarily *title* to the property. E.g., *Security Underwriting Consultants, Inc. v. Collins, Tuttle Investment Corp.,* 173 So.2d 752 (Fla.App.1965); 12 Fla. Jur.2d, Conversion and Replevin, § 38. Furthermore, the proceeding is not complete until final judgment is entered. The

issuance of a writ of replevin creates only the temporary right to have the sheriff enforce a right to possession. The original requirements for the issuance of a writ, as well as the various bond requirements (or options) are all predicated on a need to *preserve* property pending a final determination.

In the case before this court, only the preliminary stage had been reached. The writ of replevin alone clearly had no effect on title to the printing press, and thus the press became property of the estate, subject, of course, to Ford's lien. Neither can it be said that the writ deprived the debtor of its right to possession of the property (as was the case with the I.R.S. levy in *Cross Electric.*) The purely protective and temporary nature of prejudgment replevin is not consistent with a conclusion that the right to possession in the bankruptcy proceeding is frozen and remains with the party actually in possession on the date of bankruptcy. It would be even more incongruous to give plaintiff possession under its theory here, where the debtor remained in actual possession. Therefore, the court concludes that the debtor was not deprived of its possessory rights in the press prior to bankruptcy.

Although a proof of loss has been filed, the insurance proceeds, which are essential to any reorganization of this debtor, will not be available for some weeks, at the earliest. It is premature to decide that the debtor will be unable to reorganize. Since the debtor's only business is printing, at this time it must be concluded that the press is necessary to a reorganization.

The requirements of § 362(d)(2) have not been satisfied, but the automatic stay may be lifted under § 362(d)(1) if there is a lack of adequate protection to Ford. The court concludes that adequate protection will be provided by the following:

1. Return of the small press to Ford.

2. Payment of $1,500/month by the debtor to Ford.

3. Maintenance of the large press in good condition and fully insured, with Ford named as an additional insured.

4. Payment to Ford of the insurance proceeds to the extent of dimunition of the value of each of the two presses by the fire.

The automatic stay will be continued in effect conditioned upon compliance by the debtor with these provisions.

As required by B.R. 921(a), a separate Final Judgment incorporating these Findings and Conclusions is being entered this date.